```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
CARLOS CONTRERAS,                   : 08 Civ. 1976 (JSR) (JCF)
                                    :
            Petitioner,             :      REPORT AND
                                    :      RECOMMENDATION
      - against -                   :
                                    :
UNITED STATES,                      :
                                    :
            Respondent.             :
- - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:

Carlos Contreras moves pursuant to 28 U.S.C. § 2255 to vacate his sentence for one count of conspiracy to defraud the government and for seventeen counts of aiding and abetting the filing of fraudulent income tax returns.  In his petition, Mr. Contreras argues that he was denied the effective assistance of counsel at trial.  For the reasons that follow, I recommend that the motion be denied.

Background

Mr. Contreras owned and operated an income tax preparation business called Great American Income Tax ("Great American") in the Bronx.  (Trial Transcript ("Trial Tr.") at 36, 539, 541).  For the tax years 1999, 2000, and 2001, Mr. Contreras and Great American filed thousands of income tax returns on behalf of clients (Trial Tr. at 48), many of whom worked for hourly wages as laborers or as restaurant wait staff and lacked even a basic understanding of tax law.  (Trial Tr. at 131-32, 193-95, 351-53, 406-08, 474-76; Letter of Reed M. Brodsky dated May 19, 2008 ("Brodsky Letter") at 6-9).  More than 90% of these returns generated refund payments for

claimed deductions (Trial Tr. at 48-49, 526); these refunds were typically worth thousands of dollars. (Trial Tr. at 543, 586).

Business was booming in December 2004 when Mr. Contreras was indicted. (Trial Tr. at 85, 196-97, 202, 359, 640; Brodsky Letter at 1). He was charged with one count of conspiracy to defraud the government by using false identities to file tax returns and with twenty-four counts of aiding and abetting the filing of fraudulent income tax returns, both federal offenses. (Brodsky Letter at 1). In June 2005, he was tried before a jury in the Southern District of New York, with the Honorable Jed S. Rakoff presiding. (Brodsky Letter at 2).

Thirteen witnesses testified for the government during the five-day trial, including nine former Great American clients, five of whom had their taxes prepared by Mr. Contreras personally. Each taxpayer-client testified that, although he or she provided accurate information to Mr. Contreras and to Great American, the deductions ultimately claimed were either inflated or completely fabricated. (Trial Tr. at 623-30; Brodsky Letter at 6-9). Testimony also established that the taxpayer-clients were, at the time of filing, either unaware of what appeared on their tax returns (i.e., they signed their return without reviewing it) or were reassured by Great American that its refund-claiming practices were legitimate. (Trial Tr. at 88, 166, 184-85, 197, 288-92, 309, 339, 388-90, 422-23, 439-40, 479, 500; see also Brodsky Letter at 6-9).

In addition, Dominga Pena, a former Great American employee,

2

testified that under Mr. Contreras' direction and supervision she and other employees routinely falsified deductions in order to obtain large refunds for Great American clients. (Trial Tr. at 583-86). Maria Elena Brito, a Dominican woman whom Mr. Contreras once employed as his children's babysitter, also testified. (Trial Tr. at 527, 529). Although Ms. Brito was never employed by Great American and lost contact with Mr. Contreras after 1998 (Trial Tr. at 536), her name and signature frequently appeared on forms filed electronically by Mr. Contreras and Great American after that date.[1] (Trial Tr. at 529-36, 634-35).

The government offered forty-four exhibits, including tax returns filed by Great American, showing large deductions for expenses that were incongruous with the particular taxpayer-client's job and income. (Trial Tr. at 625-26; Brodsky Letter at 3). Documentary evidence also showed that Mr. Contreras used multiple identities, including Ms. Brito's, to access the IRS electronic filing system. (Trial Tr. a 529-32, 634-36; Brodsky Letter at 4-5).

At trial, Mr. Contreras was represented by Luis Diaz and Warren Meth, both privately retained. The defendant sought to establish that he did not willfully falsify tax returns but rather

---

[1] The IRS requires professional tax preparers to obtain a unique identification number in order to file returns electronically on behalf of clients. (Tr. at 32). Although Great American desired to use the IRS's electronic filing system, Mr. Contreras was unable to obtain a number under his own name because he owed tax money to the IRS. Apparently undaunted by this obstacle, Mr. Contreras used the identity of Ms. Brito and of others to obtain electronic filing numbers.

relied in good faith upon the representations of his clients and employees. (Trial Tr. at 14-20, 641-68). The defendant neither testified nor called any witnesses on his behalf.

On June 27, 2008, Mr. Contreras was convicted of one count of conspiracy to defraud the government and of seventeen counts of aiding and abetting the filing of fraudulent income tax returns. (Trial Tr. at 710-13). After the verdict was rendered, defense counsel made an oral motion for a judgment of acquittal, which was denied. (Tr. at 715). They also sought Mr. Contreras' release pending sentencing; this request was denied as well. (Trial Tr. at 723).

Mr. Contreras was subsequently sentenced to sixty months of imprisonment, followed by three years of supervised release. (Sentencing Transcript dated Nov. 8, 2005 ("Sentencing Tr.") at 15). In addition, he was fined $15,000 and ordered to pay special assessments totalling $1,800. (Sentencing Tr. at 15). Finally, Mr. Contreras was ordered to pay restitution in the amount of $3,656,751, less any amount that the IRS recovers from the relevant taxpayers. (Sentencing Tr. at 16; Brodsky Letter at 2).[2]

Mr. Contreras appealed this judgment to the Second Circuit. In a summary order dated September 18, 2007, that court held that there was sufficient evidence to support Mr. Contreras' conviction

---

[2] At sentencing, counsel for Mr. Contreras requested that he be released pending appeal for ineffective assistance of counsel and for other grounds. (Sentencing Tr. at 18). In reply, Judge Rakoff noted that "I don't, having observed the trial, believe there is a material appellate issue relating to ineffective assistance of counsel." (Sentencing Tr. at 18).

and that his sentence was reasonable.  United States v. Contreras, 247 Fed. Appx. 293, 294-96 (2d Cir. 2007).  Although Mr. Contreras argued that he was denied effective assistance of counsel, the Second Circuit determined that this claim was not fully developed on the record and thus declined to address it on the merits.  Id. at 296.

     On February 28, 2008, Mr. Contreras filed the instant motion to vacate his sentence on the grounds that he was denied the effective assistance of counsel at trial.  He specifically alleges that his attorneys (1) refused to afford him an opportunity to testify; (2) refused to call any defense witnesses; (3) refused to introduce certain relevant business records; (4) stipulated, without his consent, that the tax loss sustained by the government was material, resulting in the preclusion of Mr. Contreras' expert witness; and (5) failed to provide him with the discovery materials.  (Petition at 5; Affidavit of Carlos Contreras dated Dec. 11, 2007 ("Contreras Aff."), ¶¶ 5-7, 9).

     On February 25 and March 25, 2009, I held an evidentiary hearing on the petitioner's ineffective assistance of counsel claim.  Mr. Contreras, represented by B. Alan Seidler, testified on his own behalf, and Mr. Diaz and Mr. Meth, Mr. Contreras' trial counsel, also testified.  I accepted submissions from both the government and the petitioner following the hearing.

     In his post-hearing submission, Mr. Contreras repeats the allegations advanced in his petition and accompanying affidavit. (Letter of B. Alan Seidler dated April 8, 2009 ("Seidler Letter")

at 3-4).   He also asserts that Mr. Diaz was wholly incapable of trying a federal criminal tax case, and was thus unable to provide adequate representation.  (Seidler Letter at 3-4).  Finally, the petitioner alleges that Mr. Meth was "absolutely unprepared to take primary responsibility for [Mr.] Contreras' trial defense." (Seidler Letter at 4).

Discussion

    A.   Legal Standard

In order to make out a claim for constitutionally ineffective assistance of counsel, the petitioner must satisfy the "rigorous," "highly demanding" test articulated in Strickland v. Washington, 466 U.S. 668, 687 (1984).  See Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001) (quoting Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001), and Kimmelman v. Morrison, 477 U.S. 365, 382 (1986)). He must first establish that his counsel's performance was deficient, meaning that it "fell below an objective standard of reasonableness" given the facts and circumstances of the particular case.  United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002) (quoting United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001)); accord Strickland, 466 U.S. at 687, 690.   Second, the petitioner must "affirmatively prove" that his counsel's deficient performance prejudiced the outcome of his case.  Strickland, 466 U.S. at 687, 693.  In other words, counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

In assessing whether an attorney's performance was deficient,

the court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Courts must not allow the "distorting effects of hindsight" to color their evaluation of "conscious, reasonably informed decision[s] made by an attorney with an eye to benefitting his client." Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004) (citing Strickland, 466 U.S. at 689, and Pavel, 261 F.3d at 218). Accordingly, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (quoting Strickland, 466 U.S. at 689). Thus, counsel's reasonably prudent decisions concerning the "selective introduction of evidence, stipulations, objections, and pre-trial motions" are generally upheld as matters of trial strategy. See United States v. Plitman, 194 F.3d 59, 63-64 (2d Cir. 1999). Likewise, tactical decisions concerning which witnesses to introduce, if any, are "ordinarily not viewed as a lapse in professional representation." Best, 219 F.3d at 201 (quoting United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997)).

    B.   The Petitioner's Allegations

       1.  Opportunity to Testify

Mr. Contreras contends that, although he asked repeatedly for the opportunity, his trial counsel prevented him from exercising his right to testify. (Petition at 5; Contreras Aff., ¶ 5; Hearing Transcript dated February 25 and March 25, 2009 ("Hearing Tr.") at 9, 30-31). Mr. Diaz and Mr. Meth, however, testified that Mr.

Contreras was fully informed of his right to testify, but ultimately decided not to take the stand pursuant to their recommendation. (Hearing Tr. at 45-48, 57-59, 83-84). Both articulated several reasons for making this recommendation to Mr. Contreras (Hearing Tr. at 46-48, 83-84), including that, by taking the stand, Mr. Contreras would open the door to evidence of his prior criminal acts. (Hearing Tr. at 47). Despite their recommendation, Mr. Diaz and Mr. Meth made clear that they were not preventing Mr. Contreras from testifying. (Hearing Tr. at 48, 83-84).

To be sure, a criminal defendant has a constitutional right to testify on his own behalf. Rock v. Arkansas, 483 U.S. 44, 49-51 (1987). Moreover, whether to testify is a personal decision, one that a defendant must make for himself. Brown v. Artuz, 124 F.3d 73, 74 (2d Cir. 1997). Defense counsel bears the burden of ensuring that a defendant is fully informed of "the nature and existence of the right to testify." Id. at 79. Indeed, this obligation is "a component of the effective assistance of counsel." Id.; accord Chang v. United States, 250 F.3d 79, 83 (2d Cir. 2001). However, as any non-testifying defendant can claim that he was denied his right to testify after the trial, a defendant bears the burden of proving his claim with detailed allegations. See Chang, 250 F.3d at 84, 86.

The evidence presented in this case shows that Mr. Contreras' trial counsel satisfied their obligations. Mr. Diaz and Mr. Meth provided specific, credible testimony that they fully informed Mr.

Contreras of his rights and never prevented him from exercising them.  Furthermore, their accounts are corroborated by the trial record; Mr. Contreras never voiced his desire to testify, although Judge Rakoff asked about defense witnesses several times.  (Trial Tr. at 484-87, 521-22).  Mr. Contreras' testimony, in contrast, makes little sense.  The petitioner agreed that he spoke with his lawyers about testifying, seemingly admitting that he was informed of his right to testify.  (Hearing Tr. at 9).  According to Mr. Contreras, his lawyers assured him that his testimony would help win the trial, but then refused to call him to the stand.  (Hearing Tr. at 9, 30).  Although he alleged to have asked "every half hour" for an opportunity to testify (Hearing Tr. at 9), Mr. Contreras provided no further detail about the circumstances under which he was allegedly ultimately prevented from testifying.  Furthermore, although the petitioner claimed that he asked for new counsel during the trial in part because his attorneys would not let him testify (Hearing Tr. at 10), the trial record shows that he requested new counsel when he learned that his expert would not be testifying.  (Trial Tr. at 524).

     In sum, Mr. Contreras provided nothing more than "his own highly self-serving and improbable assertions" to support his claim.  See Chang, 250 F.3d at 86.  In the face of "eminently credible" evidence from his counsel that they never prevented Mr. Contreras from exercising his rights, this claim must fail.  Id.

          2.   Introduction of Witnesses

     Mr. Contreras also alleges that his trial counsel failed to

call witnesses who would have provided helpful testimony in his defense. (Petition at 5; Contreras Aff., ¶ 6; Hearing Tr. at 7-8, 10). As previously noted, decisions as to which, if any, witnesses to introduce are generally upheld as matters of trial strategy. This case presents no exception: as illustrated below, Mr. Contreras has failed to demonstrate that his counsel's actions were anything but reasonable tactical decisions.

Although Mr. Contreras claimed to have produced a list of 100 supporting witnesses to his counsel in advance of trial, he could identify only two potential witnesses by name at the evidentiary hearing on the instant motion. (Hearing Tr. at 18-24). Moreover, he could not articulate how any witness' testimony would have been helpful. Indeed, the testimony of Claudia Rodriguez, one of the two witnesses named by Mr. Contreras, would have likely hurt his case. According to a proffer by the government at trial, Ms. Rodriguez was prepared to testify that Mr. Contreras "filled out her return and included expenses and items that she never told him about and she didn't understand." (Trial Tr. at 485-86). Furthermore, Mr. Diaz and Mr. Meth provided credible testimony that Mr. Contreras in fact provided the names of only three potential witnesses, and did so after the trial had begun. (Hearing Tr. at 41-43, 79-80). Of these three witnesses, one was Ms. Rodriguez, another was Gary Joseph, who ultimately testified for the government, and the third was Gloria Quinones. Ms. Quinones was prepared to testify that she experienced no problems after Mr. Contreras prepared her taxes; Judge Rakoff, however, indicated that

this testimony was likely inadmissible.  (Trial Tr. at 485).

### 3.   Introduction of Documents

Mr. Contreras also alleges that his counsel failed to introduce business records that would have aided in his defense. (Petition at 5; Contreras Aff., ¶ 6; Hearing Tr. at 7, 12, 24-29). According to the petitioner, he provided his counsel with boxes of relevant documents and made clear, during trial, his desire to introduce certain records.  (Hearing Tr. at 24-28).  Mr. Diaz agreed that he received some business records from Mr. Contreras, but maintained that Mr. Contreras only provided these documents after Mr. Diaz requested them.  (Hearing Tr. at 40).  Furthermore, Mr. Diaz testified that the records produced by the petitioner contained nothing more than duplicates of items produced by the government during discovery.  (Hearing Tr. at 40).  Mr. Diaz and Mr. Meth also credibly denied that they ignored any request by Mr. Contreras to introduce relevant documents. (Hearing Tr. at 41, 77-78).  Indeed, Mr. Contreras could not identify any particular document that he sought to introduce.  (Hearing Tr. at 28).  In sum, Mr. Contreras again failed to show that his counsel's strategic decisions were unreasonable.

### 4.   Stipulation of Materiality

Mr. Contreras contests his counsel's decision to stipulate that the deductions claimed by Great American's clients and challenged by the government were material.  (Petition at 5; Contreras Aff., ¶ 7).  The petitioner alleges that his attorneys made this decision without his consent (Contreras Aff., ¶ 7) and

that it was improper because it resulted in the preclusion of his expert witness.  (Contreras Aff., ¶ 7; Trial Tr. at 524).

Like the decision to call witnesses or introduce evidence, the decision to stipulate is one of trial strategy that courts hesitate to second guess.  Moreover, the record here indicates that Mr. Contreras' counsel almost certainly made a prudent strategic decision by agreeing to stipulate.

At Mr. Contreras' trial, the government intended to call an expert witness to testify that, as a result of the false deductions claimed on the tax returns, the government suffered a substantial tax loss.  (Trial Tr. at 429-30).  Judge Rakoff informed the parties, however, that the government's expert would be precluded if the defendant would agree to stipulate.  (Trial Tr. at 429-30, 481-82; Hearing Tr. at 44-45, 82).  In addition, Judge Rakoff made clear his opinion that, because any deduction "capable of influencing the correct computation of the amount of tax liability" is "material" under the applicable law, "every last one of the deductions" challenged by the government met that definition.[3] (Trial Tr. at 482).  Accordingly, Mr. Contreras' counsel agreed to stipulate to materiality, thereby precluding the government's witness.  (Trial Tr. at 483; Hearing Tr. at 44-45, 82).

Thereafter, Mr. Contreras' counsel sought to introduce their expert to testify on a variety of issues.  (Trial Tr. at 522-23).  Judge Rakoff, however, had previously limited the defense expert's

---

[3] As Judge Rakoff articulated it, even one dollar is a material amount.  (Trial Tr. at 482).

testimony in response to a motion made by the government. (Hearing Tr. at 43-44). After referencing this previous decision, Judge Rakoff ruled that the remainder of the defense expert's testimony was irrelevant in light of the stipulation. (Trial Tr. at 522). Thus, although the decision to stipulate was part of the reason that the defense expert was precluded from testifying, it was not the sole or primary reason.

The testimony of Mr. Diaz and Mr. Meth affirmed that their decision to stipulate was indeed a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." Cox, 387 F.3d at 198 (quoting Pavel, 261 F.3d at 218). Both attorneys gave detailed explanations in support of their strategic judgment. (Hearing Tr. at 43-45, 82, 101-02). Indeed, the expert himself was involved in the decision-making process; he too agreed with their conclusion.[4] (Hearing Tr. at 44-45, 56).

Mr. Contreras' testimony, in contrast, clearly illustrated that he did not understand the stipulation. (Hearing Tr. at 15). He also testified that he was not aware that the government had previously successfully moved to preclude his expert from testifying about certain topics. (Hearing Tr. at 32). Moreover, he claimed to have paid the expert himself (Hearing Tr. at 10),

_____

[4] According to Mr. Diaz's recollection, Mr. Contreras was also involved in the discussions about stipulating and initially agreed to the stipulation. (Hearing Tr. at 56). It is undisputed, however, that Mr. Contreras later announced that he wanted to retain new counsel if his defense expert was precluded from testifying. (Trial Tr. at 524). Mr. Diaz said that he was "personally surprised" by Mr. Contreras' position. (Hearing Tr. at 56). Judge Rakoff denied the request, deeming it "untimely and with any merit." (Trial Tr. at 524).

13

although apparently the expert was paid under the Criminal Justice Act.  (Hearing Tr. at 62).

Overall, there is no indication that the decision of Mr. Contreras' counsel to stipulate was anything other than sound trial strategy.  Once again, Mr. Contreras' claim fails.

### 5.   Access to Discovery Materials

Mr. Contreras also faults his counsel for neglecting to provide discovery materials to him in advance of trial.  (Contreras Aff. at 7; Hearing Tr. at 13).  Mr. Diaz, however, testified that he reviewed discovery with Mr. Contreras at least twice, once when he first received the documents and again in preparation for trial. (Hearing Tr. at 39).  Indeed, according to Mr. Diaz, the petitioner even photocopied certain documents and took them with him. (Hearing Tr. at 40).  Mr. Contreras wholly failed to rebut the credible testimony of his counsel, and  his claim is therefore without merit.

### 6.   Competence of Mr. Diaz and Mr. Meth

Finally, in his post-hearing submission to the Court, Mr. Contreras broadly asserts that Mr. Diaz was incapable of trying a federal criminal tax case and that Mr. Meth failed to prepare adequately in advance of trial.  (Seidler Letter at 3-4).  The claims concerning Mr. Diaz, Mr. Contreras' lead counsel, are simply rebutted by the record.  When he represented Mr. Contreras, Mr. Diaz had over ten years of experience defending criminal cases in federal court.  (Hearing Tr. at 49).  Moreover, Mr. Diaz demonstrated his competence: he conducted necessary pre-trial

preparation work such as reviewing discovery and meeting with his client (Hearing Tr. at 39, 62), drafted the jury instructions (Hearing Tr. at 86), gave a coherent summation (Trial Tr. at 663-68), and cross-examined some government witnesses (Hearing Tr. at 86).

As Mr. Diaz had never previously handled a federal tax fraud case, he acted reasonably in seeking the advice of an accountant and then engaging Mr. Meth, a lawyer with over twenty years of relevant experience who formerly worked for the IRS. (Hearing Tr. at 10-11, 14, 50, 74-75). Mr. Meth apparently did not spend a significant amount of time preparing for Mr. Contreras' trial in advance. (Hearing Tr. at 75-76, 86-88). However, he credibly described a number of ways that he prepared for his role as co-counsel and affirmed that he was adequately prepared for trial. (Hearing Tr. at 75-76, 87). More importantly, Mr. Contreras failed to show that Mr. Meth's alleged lack of preparation had a negative impact on his performance as defense counsel.

Thus, under the facts and circumstances of his case, Mr. Contreras has failed to establish that his counsel's performance "fell below an objective standard of reasonableness." Couto, 311 F.3d at 187 (quoting Hernandez, 242 F.3d at 12). His claim again fails.

C. Prejudice

Although Strickland establishes a two-part test, a court need not address both prongs. Rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

15

prejudice, that course should be followed." Strickland, 466 U.S.
at 697.  Here, even assuming that all of Mr. Contreras' allegations
are true, there is simply no indication that "but for counsel's
unprofessional errors, the result of the proceeding would have been
different." Id. at 694; see Brown v. Artuz, 124 F.3d 73, 79-81 (2d
Cir. 1997) (holding that petitioner alleging ineffective assistance
due to counsel's failure to advise of right to testify must still
establish prejudice under Strickland).   On the contrary, as the
Second Circuit stated in affirming the conviction,

> Sufficient evidence supports the jury's finding that
> Contreras entered into a conspiracy to defraud the United
> States under 18 U.S.C. § 286, and that he aided and
> abetted the filing of fraudulent tax returns under 26
> U.S.C. § 7206(2). First, the record does not support
> Contreras's contention that he did not prepare most of
> the tax returns at issue. The government called, among
> other witnesses, nine taxpayers and clients and one
> former employee of Contreras's income tax preparation
> business. Five of the clients testified for the
> government that Contreras personally prepared their tax
> returns. Moreover, the evidence at trial demonstrated
> that Contreras instructed and supervised preparation of
> fraudulent tax returns by his employees.
>
> Second, the record does not support Contreras's
> assertion that he relied in good faith on information
> furnished by tax clients in preparing their tax returns.
> Two of the client-witnesses testified that they did not
> provide Contreras with information about their expenses,
> and four testified that after discussing their expenses
> with him, Contreras estimated the amounts and then
> increased the amounts he put into the forms.

Contreras, 247 Fed. Appx. at 294-95.  Judge Rakoff put it somewhat
more succinctly:  "[W]hat I saw was one of the most blatant cases
of tax preparer fraud that I have seen not only in my nine years on
the bench but in the twenty-five years that I was a criminal
defense lawyer and a prosecutor before that."  (Trial Tr. at 718).

16

Conclusion

    For the reasons explained above, I recommend that the
petitioner's motion be denied.  Pursuant to 28 U.S.C. § 636(b)(1)
and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil
Procedure, the parties shall have ten (10) days from this date to
file written objections to this Report and Recommendation.  Such
objections shall be filed with the Clerk of the Court, with extra
copies delivered to the chambers of the Honorable Jed S. Rakoff,
Room 1340, and to the chambers of the undersigned, Room 1960, 500
Pearl Street, New York, New York 10007.  Failure to file timely
objections will preclude appellate review.

                         Respectfully submitted,


                         JAMES C. FRANCIS IV
                         UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         April 30, 2009

Copies mailed this date:

B. Alan Seidler, Esq.
580 Broadway, Room 717
New York, New York 10012

Reed M. Brodsky, Esq.
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007

17